Alter & Brescia, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue, Suite 401
Harrison, New York 10528
(914) 670-0030

**Hearing Date: March 28, 2017**
**Hearing Time: 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                    Chapter 11

    Barton Properties New York LLC,             Case No. 16-23715(rdd)

                          Debtor.
-------------------------------------------------------------X

**NOTICE OF MOTION FOR ORDER (i) PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 6004, AUTHORIZING AND
APPROVING PURCHASE AND SALE AGREEMENT OF DEBTOR'S REAL
PROPERTY; (ii) AUTHORIZING PAYMENT TO THE SECURED CREDITOR, AS
WELL AS REAL ESTATE TAXES AT THE CLOSING; (iii) AUTHORIZING
PAYMENT OF THE EARNED BROKER'S COMMISSION AT THE CLOSING; (iv)
AUTHORIZING THE ASSIGNMENT OF THE DEBTOR'S COMMERCIAL TENANT
LEASE WITH LUIS LOPEZ; (v) GRANTING GOOD FAITH PURCHASER STATUS
TO PURCHASER; AND (vi) RELATED RELIEF PURSUANT TO SECTION 365 OF
THE BANKRUPTCY CODE, IF DEBTOR'S REAL PROPERTY IS SOLD TO A
THIRD PARTY**

      **PLEASE TAKE NOTICE** that upon the application of Barton Properties New

York LLC, (the "Debtor"), the above captioned Debtor, by its attorneys, Alter & Brescia,

LLP, the undersigned will move this Court, before the Honorable Robert D. Drain,

United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas

Street, Courtroom 118, White Plains, New York 10601, on the **28th day of March, 2017**

**at 10:00 a.m.** (the "Hearing Date"), or as soon thereafter as counsel may be heard, for

an Order (i) pursuant to Sections 363(b), (f) and (m) of Title 11 of the United States

Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure ("Bankruptcy

Rule(s)") 6004 authorizing and approving the sale of Debtor's real property located and

known as 7 & 10 Willow Street, Port Chester, New York (collectively the "Property"),

pursuant to Purchase and Sale Agreement entered into with Luis E. Lopez, to be

conveyed free and clear of all liens, claims and encumbrances, (ii) authorizing the

payment, upon closing, to the secured creditor, as well as the real estate taxes due, (iii)

authorizing the payment, upon closing, of the earned broker's commission; (iv)

authorizing the assignment of the Debtor's commercial tenant lease with Luis Lopez, if

necessary; (v) granting good faith purchaser status to Luis Lopez; and (vi) related relief

pursuant to Section 365, if the Property is sold to a third party, together with other

related relief.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief

requested in the Application must be made in writing, filed electronically with the United

States Bankruptcy Court for the Southern District of New York at the Bankruptcy Court's

web address www.nysb.uscourts.gov, with a copy delivered directly to the Chambers of

Honorable Robert D. Drain, and served upon (i) Alter & Brescia, LLP, 550 Mamaroneck

Avenue, Suite 401, Harrison, New York 10528, Attn: Bruce R. Alter, Esq., and (ii) The

Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street,

Room 1006, New York, New York 10004, Attn: Susan Arbeit, Esq., so as to be received

at least three (3) days prior to the Hearing Date.

Dated: Harrison, New York
       February 27, 2017

                                    ALTER & BRESCIA, LLP
                                    Attorneys for the Debtor

                                    By: */s/ Bruce R. Alter*
                                        Bruce R. Alter
                                      550 Mamaroneck Avenue, Suite 401
                                      Harrison, New York 10528
                                      (914) 670-0030

Alter & Brescia, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue, Suite 401
Harrison, New York 10528
(914) 670-0030

**Hearing Date: March 28, 2017**
**Hearing Time: 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                                     Chapter 11

    Barton Properties New York LLC,                    Case No. 16-23715(rdd)

                             Debtor.
-------------------------------------------------------------X

**APPLICATION FOR ORDER (i) PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 6004, AUTHORIZING AND
APPROVING PURCHASE AND SALE AGREEMENT OF DEBTOR'S REAL
PROPERTY; (ii) AUTHORIZING PAYMENT TO THE SECURED CREDITOR, AS
WELL AS REAL ESTATE TAXES AT THE CLOSING; (iii) AUTHORIZING PAYMENT
OF THE EARNED BROKER'S COMMISSION AT THE CLOSING; (iv) AUTHORIZING
THE ASSIGNMENT OF THE DEBTOR'S COMMERCIAL TENANT LEASE WITH LUIS
LOPEZ; (v) GRANTING GOOD FAITH PURCHASER STATUS TO PURCHASER;
AND (vi) RELATED RELIEF PURSUANT TO SECTION 365 OF THE BANKRUPTCY
CODE, IF <u>DEBTOR'S REAL PROPERTY IS SOLD TO A THIRD PARTY</u>**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

      Barton Properties New York LLC, the above captioned debtor and debtor-in-

possession ("Debtor" or "Barton"), by its attorneys, Alter & Brescia, LLP, as and for its

application for an order (i) pursuant to Sections 363(b), (f) and (m) of Title 11 of the

United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure

("Bankruptcy Rule(s)") 6004 authorizing and approving the sale of Debtor's real property

located and known as 7 & 10 Willow Street, Port Chester, New York (collectively the

"Property"), pursuant to Purchase and Sale Agreement entered into with Luis E. Lopez,

to be conveyed free and clear of all liens, claims and encumbrances, (ii) authorizing the

payment, upon closing, to the secured creditor, as well as the real estate taxes due, (iii)

authorizing the payment, upon closing, of the earned broker's commission; (iv)

authorizing the assignment of the Debtor's commercial tenant lease with Luis Lopez, if

necessary; (v) granting good faith purchaser status to Luis Lopez; and (vi) related relief

pursuant to Section 365, if the Property is sold to a third party, together with other

related relief, respectfully represents as follows:

## JURISDICTION

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§

157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for

the Southern District of New York, dated July 10, 1984 (Ward, C.J.).  Venue of these

proceedings and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408

and 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

## BACKGROUND

2.    On or about December 14, 2016 (the "Filing Date"), the Debtor filed a

voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.

The Debtor has continued in possession of its property and the management of its

affairs as debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

3.    No Official Committee of Unsecured Creditors has been appointed. No

trustee or examiner has been appointed.

4.    Debtor is a single asset real estate entity that owns a 4500 square foot

commercial building located at 7 Willow Street, Port Chester, New York and a parking

lot across the street located at 10 Willow Street, Port Chester, New York.

2

5.      The Property has a fair market value of approximately $1,300,000 based upon the listing placed by the Court authorized real estate broker and the assessed valuation as set forth in the tax search annexed here to as Exhibit "A".  Titan Capital ID, LLC ("Titan" or "Lender") holds a first priority secured lien against the Property in the alleged approximate amount of $887,081.40 as of January 12, 2017, not inclusive of Bankruptcy Legal Fees and Costs, or per diem charges for January 13, 2017 going-forward (at a rate of $236.67 per day).  Titan asserts such amount in its Motion to Dismiss Chapter 11 Case and/or for Relief from Stay dated January 17, 2017, but has not yet filed its proof of claim.

6.      In addition, Debtor owes real estate taxes to the Town of Rye Receiver of Taxes for the 7 Willow Street Property in the approximate amount of $22,270.99 and for the 10 Willow Street Property in the approximate amount of $1,326.99. Real estate taxes will increase at $140 a day from the present time until the closing in April and should therefore increase by approximately $11,000.

7.      The Debtor is party to a Lease dated December 1, 2015 and Addendum to Lease dated August 1, 2016 (collectively the "Lease") for the Property as Landlord with Luis Lopez, the prospective purchaser, as Tenant. Per the Lease, the term commences and the Tenant's rent payment obligation begins on the day that the Tenant has received the authorizations necessary from Port Chester, New York in order to permit the Tenant to operate a restaurant at 7 Willow Street. Should Tenant not receive the requisite authorizations from Port Chester, New York by June 30, 2017, either party may cancel and terminate this Lease on ten (10) days prior written notice.

3

8.      The Property to be conveyed by Debtor, is its only asset, other than some miscellaneous kitchen equipment with little to no value.

## THE CONTRACT OF SALE

9.      The efforts employed by the Debtor to sell the Property were successful and resulted in the Purchase and Sale Agreement with Purchaser, Luis E. Lopez (hereinafter "Purchaser" or "Lopez") for the purchase price of $1,235,000.00 (the "Purchase Price"). Debtor intends to convey title to the Property to Purchaser and assign to Purchaser all of its interest in the Lease (if necessary), in accordance with the Purchase and Sale Agreement dated January 25, 2017 and the Modification Agreement dated February 23, 2017 between Debtor and Lopez (collectively the "Agreement" or "Contract"), copies of which are attached hereto as Exhibit "B".

10.     The following are some of the key provisions of the Agreement:

(a)     The Purchase Price is One Million Two Hundred Thirty Five Thousand Dollars ($1,235,000.00)

(b)     Purchaser has paid to Seller the sum of $10,000.00 (the "Cash Deposit") upon execution of the Agreement with the balance due at the closing of the Agreement.  Alter & Brescia, LLP (hereinafter "Alter Brescia" or "Escrow Agent"), Bankruptcy Counsel to the Debtor and Escrow Agent pursuant to the Agreement, are in receipt of the Cash Deposit, which has been deposited in an IOLA interest bearing escrow account at Signature Bank.

(c)     The Property being sold will be free and clear of all liens, claims, encumbrances and interests and all "as is" and "where situated".

4

(d)     Seller will pay the commission owed to C.J. Pagano & Sons, Inc. in
connection with the Agreement in the amount of $12,350.00
(representing 1% of the Purchase Price of $1,235,000.00 and 4% less
than if sold to a different Purchaser) at the closing from the proceeds
of the sale.

(e)     In the event that a higher and better offer is accepted and
approved by the Bankruptcy Court, Purchaser shall be entitled to a
$10,000.00 breakup fee.

(f)     The Agreement is subject to and conditioned upon the approval by
the United States Bankruptcy Court.

(g)     The Closing of this transaction shall take place no later than April
15, 2017.

(h)     The Modification Agreement contains provisions pursuant to which
the financing contingency, the environmental engineering and due
diligence contingencies are withdrawn.

11.     As of the time of the execution of the Agreement with Lopez, his offer was
the highest offer made on the Property. Additionally, because the Purchaser's offer is
the only firm offer made, the Debtor believes that Purchaser's offer is also the best offer
for the Property. Other parties have shown interest and made inquiries in the Property
but none of those parties have made offers to purchase. The Debtor, therefore,
believes that the Property should be made available to other potential purchasers, in
accordance with the provisions of Section 363 of the Bankruptcy Code and the Property
will continue to be shown and any future offers considered.

5

12.     The Debtor, therefore, seeks the approval of the sale to Lopez pursuant to the terms and conditions of the Agreement, but subject to the provisions of Section 363 of the Bankruptcy Code.   The instant Motion is being served upon all parties who expressed an interest in purchasing the Property, prepetition and post petition, and are herein advised that unless a higher and better offer is made to purchase the Property, the Debtor seeks Bankruptcy Court approval of the sale of the Property to Lopez in accordance with the Agreement.   From a period preceding the filing of its petition, Debtor has negotiated with interested parties for the sale of the Property.   Prior agreements to sell the Property at prices similar to the Lopez offer were negotiated, but never signed or materialized.   The other potential buyers who have contacted Debtor's broker since the filing of the petition, do not approach the Lopez price, and any contract with another purchaser would increase the broker's commissions by 4%.

13.     The proposed Agreement with Lopez will yield sufficient proceeds to pay all of the Debtor's creditors in full, as well as all closing costs of the sale transaction, most of which will be paid at the closing of this transaction and in accordance with this Motion, with a surplus remaining for the Debtor's sole member. As such, the Debtor submits that the relief sought herein is in the best interests of the estate and its creditors.

### RELIEF REQUESTED AND THE LEGAL BASIS THEREFORE

14.     Debtor submits this Application for authority to sell the Property pursuant to the terms and provisions of the Contract, free and clear of all liens, claims and encumbrances, pursuant to Sections 363(b) and (f) of the Bankruptcy Code and Bankruptcy Rule, 6004.

6

15.     Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, as follows:

> "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…"

16.     In fact, Bankruptcy Rule 6004 specifically addresses the procedures required for a private sale, as contemplated herein and provides as follows:

> (f) Conduct of sale not in the ordinary course of business
> (1) Public or private sale
> All sales not in the ordinary course of business may be by private sale or by public auction.

17.     "When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd.* 147 B.R. 650 (S.D.N.Y. 1992).

18.     The Debtor believes that the Purchase Price for the sale of the Property is the highest and best price and that the best interests of the estate and its creditors shall be well served with the proposed sale as it will result in payment in full to all creditors.

19.     In light of the foregoing, the Debtor submits that the private sale of the Property is reasonable and a sale at auction is not warranted as it will not yield any greater purchase price or any greater recovery to the creditors of the Debtors' estate. The Debtor will continue to entertain other offers, pending this Court's approval of the Agreement and the actual closing of title to the property.

7

## REQUIREMENTS FOR PRE-CONFIRMATION SALE

20.     The Debtor submits that it is in the best interest of the estate to obtain immediate approval of the Contract so as to comply with the requirements of the Agreement which provides for a closing date no later than April 30, 2017.

21.     It is well settled that a sale of a debtor's assets may take place prior to the filing and confirmation of a plan of reorganization, if supported by the sound business judgment of the debtor's management. *See In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *Official Comm. Of Unsecured Creditors of LTV Aerospace and Defense Co. v. LTV Corporation (In re Chateaugay Corp.)*, 973 F.2d 141, 143-144 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

22.     As set forth above, sound business judgment exists herein for the sale of the Property to the proposed Purchaser. This proposed sale will yield sufficient funds to pay all of the Debtor's creditors in full.  Based thereon, the Debtor presently believes that the proposed Purchase Price is the highest and best offer and that the estate will not benefit by conducting an auction. In light of the extensive marketing activities that have been undertaken by the Debtor and the current Agreement and Purchase Price, an auction process would be unnecessary as the creditors of the Debtor's estate would receive no greater recovery.

23.     Based upon the foregoing, it is respectfully submitted that sound business judgment exists for a pre-confirmation sale of the Property on the terms and conditions set forth in the respective Agreement.

8

## SALE FREE AND CLEAR OF ALL
## LIENS, CLAIMS AND ENCUMBRANCES

24.     Section 363(f) of the Bankruptcy Code provides that a debtor in

possession may sell property free and clear of liens, claims and encumbrances with any

such encumbrances attaching to the net proceeds of the sale, if one of the following

conditions is satisfied:

(1)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)     the lien holder or claimholder consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     the lien holder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

See 11 U.S.C. §363(f).

25.     The Property is encumbered by a first mortgage and certain liens, as

further described below:

(a)     The first mortgage held by Titan, after calculating all accrued interest, is

approximately $925,000.00

(b)     The town of Rye is presently owed approximately $23,000 for real estate

taxes both pre and post-petition, and will be owed approximately $35,000 at

the time of the closing.

26.    The Debtor seeks authority to satisfy the Titan mortgage obligation, as well as the taxes due to the Town of Rye in full from the sale proceeds of the sale of the Property at the closing.  The total of the amount due to Titan and the Town of Rye is in the approximate amount of $920,000, and the broker is due $12,350 thereby leaving approximately $303,650 in surplus proceeds ("the Surplus Proceeds"), exclusive of any adjustments at closing. The Surplus Proceeds are more than sufficient to pay all remaining closing adjustments, administrative expensive and creditors in full.

27.    In light of the fact that the Debtor anticipates sufficient proceeds to satisfy the outstanding mortgage and real estate taxes and provide Surplus Proceeds, it is respectfully submitted that the elements of Section 363(f) of the Bankruptcy Code are satisfied.

### REQUEST FOR AUTHORIZATION TO PAY CERTAIN PRE-PETITION SECURED DEBTS & PRIORITY TAXES, CLOSING COSTS PRIOR TO CONFIRMATION OF A PLAN OF REORGANIZATION

28.    In connection with the closing of the Agreement, the Debtor intends to pay certain secured & priority tax obligations, as set forth above in Paragraph 26, as well as the usual closing costs associated with the sale of real property, including the earned broker's commission to C.J. Pagano & Sons, Inc.

29.    Outside of the Chapter 11 process, it is customary for the seller in a real estate transaction to pay a variety of charges at closing, including, but not limited to, payoff of the mortgagee, making adjustments to the sale price for payment of contract contingencies, and payment of real estate taxes, transfer taxes, outstanding utilities,

10

and the like. In the context of a Chapter 11 proceeding, however, the Debtor is prohibited from paying any pre-petition debts.

30.     Because the Debtor will be unable to close if certain pre-petition secured & priority tax debts, claims, and closing adjustments are not paid at the time of closing, the Debtor seeks authority to pay such charges as may be required at closing pursuant to 11 U.S.C. Sections 105 and 363(b).

31.     The Debtor anticipates making the following payments at closing: (a) payment of the Titan first mortgage in full; (b) payment of any outstanding pre-petition and post-petition real estate taxes to the Town of Rye; (c) payment of the broker's commission to C.J. Pagano & Sons, Inc. in the amount of $12,350.00 (1% of the Purchase Price); and (d) all other closing costs associated with the sale of real property.

32.     The Debtor respectfully suggests that the Court has the requisite authority to enter such an order pursuant to Sections 363(b) and 105 of the Bankruptcy Code.

33.     Section 105 of the Bankruptcy Code provides as follows:

> (a) The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

34.     The pre-confirmation sale, and the necessity for the relief requested hereby, is exactly the type of situation envisioned by Section 105.

35.     In light of the general prohibition on payment of pre-petition claims prior to confirmation of a plan of reorganization, and the apparently contradictory nature of a pre-confirmation sale pursuant to Section 363(b) of the Bankruptcy Code, the Debtor requests entry of an order authorizing it to pay such pre-petition secured claims, closing

11

costs and other charges outside of a confirmed plan of reorganization, in its business

judgment, as may be required to close the sale transaction contemplated hereby.

## GOOD FAITH PURCHASER STATUS

36.    Section 363(m) of the Bankruptcy Code provides as follows:

> (m) The reversal or modification on appeal of an authorization
> under subsection (b) or (c) of this section of a sale or lease of
> property does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

37.    The Debtor respectfully requests that the Court enter an order granting

the proposed purchaser, Lopez, "good faith purchaser" status pursuant to Section

363(m) of the Bankruptcy Code.

38.    The Purchaser is represented by separate counsel and has been since

the outset of its negotiations with the Debtor and has no connection or relationship with

the Debtor, the Debtor's principal or Debtor's attorneys, except that Lopez is the current

Tenant of the Property under the Lease.

39.    Upon information and belief, the Purchaser has negotiated, by and

through its respective counsel, and entered into the Contract in good faith and at arms

length with the Debtor. The Purchaser is not an "insider" of the Debtor within the

meaning of Section 101(31) of the Bankruptcy Code, and is not controlled by, or acting

on behalf of, and insider of the Debtor or the Debtor itself.

40.    As such, the Debtor submits that the Purchaser has taken part in the

transaction contemplated hereby in a manner consistent with granting him "good faith

purchaser" status, and the protections concomitant with such status.

12

## THE SURPLUS PROCEEDS

41.     As set forth above, the Debtor anticipates approximately $303,650 (before

closing adjustments) in Surplus Proceeds from the sale of the Property.  Any Surplus

Proceeds shall be placed in the escrow account of Debtor's counsel and disbursed only

in accordance with the further Orders of this Court.

## OTHER CONSIDERATIONS

42.     Should a third party make an offer that is higher and better than the terms

and conditions as set forth in the Agreement with Lopez, prior to the closing of this

transaction, the Debtor herein reserves its rights to reject the Agreement between the

Debtor and Lopez pursuant to Section 365 and/or any applicable provision of the

Bankruptcy Code. The claim of Lopez shall be the amount of the 'break-up" fee, as set

forth in Debtor's Agreement with Lopez.

## NOTICE OF SALE AND HEARING

43.     Bankruptcy Rule 6004 states, in part, as follows:

(a)  Notice of Proposed Use, Sale or Lease of Property.  Notice of a
proposed use, sale or lease of property, other than in the ordinary course
of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i) and (k)...

44.     This Application is being served in accordance with the applicable

provisions of Federal Rule of Bankruptcy Procedure 2002 on (a) all of the Debtor's

creditors; (b) all parties filing Notices of Appearance in these proceedings, (c) the Office

of the United States Trustee and (d) all parties who have expressed an interest in the

Property, so as to provide at least twenty one (21) days notice of the relief requested,

thereby satisfying Federal Rule of Bankruptcy Procedure 2002(a)(2) and (k).

13

Additionally, the Debtor respectfully submits that the descriptions and notices provided by this Application and exhibits hereto provide adequate notice of the terms and conditions of the proposed sale, thereby satisfying Federal Rule of Bankruptcy Procedure 2002(c)(1). Finally, no committee has been appointed herein, and therefore Federal Rule of Bankruptcy Procedure 2002(i) is not applicable. It is respectfully submitted that this notice constitutes good and sufficient service hereof.

45.     No previous request for the relief sought herein has been made to this Court.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order: (i) pursuant to Sections 363(b), (f) and (m) of Title 11 of the United States Code and Federal Rule of Bankruptcy Procedure 6004 authorizing and approving the sale of Debtor's real property located and known as 7 and 10 Willow Street, Port Chester, New York, pursuant to Purchase and Sale Agreement entered into with Luis E. Lopez, to be conveyed free and clear of all liens, claims and encumbrances, (ii) authorizing the payment, upon closing, to the secured creditor, as well as the real estate taxes due to the Town of Rye, (iii) authorizing the payment, upon closing, of the earned broker's commission; (iv) authorizing the assignment of the Debtor's commercial tenant lease with Luis Lopez, if necessary; (v) granting good faith purchaser status to Luis Lopez; and (vi) related relief pursuant to Section 365, if the Property is sold to a third party, together with other related relief as is just under the circumstances.

Dated:  Harrison, New York
        February 27, 2017        ALTER & BRESCIA, LLP,
                                 Attorneys for Debtor
                                 By: /s/ Bruce R. Alter
                                    Bruce R. Alter

14

*Exhibit "A"*



# MUNICIPAL DATA
## SERVICES

25 Hyatt Street – Suite 301
Staten Island, NY 10301
Phone – (718) 815-0707
Fax – (718) 815-9101
www.munidata.com

Set forth below are the unpaid taxes, water rates, assessments which are properly filed and indexed liens as of the date of this search.

**County:** Westchester       **Title Number:** NYTR NYT18567
**Swis Code:** 554801
**Town/City:** Town of Rye       **Village:** Village of Port Chester
**Address:** 7 WILLOW STREET       **Owner:** BARTON PROPERTIES
                                              NEW YORK, LLC

**School Dist:** PORT CHESTER       **Tax Class:** 424   Night Clubs
**District:**       **Acreage:** .11       **District:**
**Section:** 142.38       **Account#:**       **Section:** 2       **Village/City**
**Block:** 2       **Land AV:** $253,400       **Block:** 107       **Land AV:** $253,400
**Lot:** 47       **Total AV:** $1,262,700       **Lot:** 25,26       **Total AV:** $1,262,700
**NON-EXEMPT**       **NON-EXEMPT**

## ALL TAXES BELOW BASED ON ASSESSED VALUE OF $1,228,000

| **2016/2017** | **SCHOOL TAX** | $29,185.20 | | YEAR: 7/1-6/30 |
| | 1st Payment | $14,592.60 | PAID | DUE.: 9/1 |
| | 2nd Payment | $14,592.60 | OPEN+PEN | DUE.: 1/1 |

| **2016** | **TOWN TAX** | $5,441.92 | PAID | YEAR: 1/1-12/31 |
| | | | | DUE.: 4/1 |

| **2016/2017** | **VILLAGE TAX** | $13,313.83 | | YEAR: 6/1-5/31 |
| | 1st Payment | $6,656.92 | PAID | DUE.: 6/1 |
| | 2nd Payment | $6,656.91 | PAID | DUE.: 12/1 |

WATER ACCOUNT #  PRIVATE

POSTING DATE:  2/20/2017

SUBJECT TO CONTINUATION

Our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy. Neither our tax search nor our policy covers any part of streets on which the premises to be insured abut. Recent payments of any open items returned on this tax search may not be reflected on the public records. Therefore, please request the seller or borrower to have receipts for bills available at the closing.

MUNICIPAL DATA SERVICES, INC.



Continued on next page..
Page: 1   of 2                    3092412        2469032



# MUNICIPAL DATA
## — SERVICES —

25 Hyatt Street – Suite 301
Staten Island, NY 10301
Phone – (718) 815-0707
Fax – (718) 815-9101
www.munidata.com

Continued

Set forth below are the unpaid taxes, water rates, assessments which are properly filed and indexed liens as of the date of this search.

**County:**  Westchester          **Title Number:**  NYTR NYT18567

## PAYMENT INFORMATION

**SCHOOL TAX COLLECTOR**
Receiver of Taxes
Town of Rye
222 Grace Church Street
Port Chester NY, 10573
Telephone: 914 939-3558

**TOWN TAX COLLECTOR**
Receiver of Taxes
Town of Rye
222 Grace Church Street
Port Chester NY, 10573
Telephone: 914 939-3558

**VILLAGE TAX COLLECTOR**
Receiver of Taxes
Town of Rye
222 Grace Church Street
Port Chester NY, 10573
Telephone: 914 939-3558

Our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy. Neither our tax search nor our policy covers any part of streets on which the premises to be insured abut. Recent payments of any open items returned on this tax search may not be reflected on the public records. Therefore, please request the seller or borrower to have receipts for bills available at the closing.

**MUNICIPAL DATA SERVICES, INC.**

3092412          2469032



# MUNICIPAL DATA
## ── SERVICES ──

25 Hyatt Street – Suite 301
Staten Island, NY 10301
Phone – (718) 815-0707
Fax – (718) 815-9101
www.munidata.com

Set forth below are the unpaid taxes, water rates, assessments which are properly filed and indexed liens as of the date of this search.

**County:** Westchester          **Title Number:** NYTR NYT18567A
**Swis Code:** 554801
**Town/City:** Town of Rye          **Village:** Village of Port Chester
**Address:** 10 WILLOW STREET          **Owner:** BARTON PROPERTIES
                                                          NEW YORK, LLC

**School Dist:** PORTCHESTER          **Tax Class:** 331  Commercial Vacant Land with
                                                                    Minor Improvements

| | | | |
|---|---|---|---|
| **District:** | **Acreage:** .11 | **District:** | |
| **Section:** 142.38 | **Account#:** | **Section:** 2 | **Village/City** |
| **Block:** 2 | **Land AV:** $126,400 | **Block:** 107 | **Land AV:** $126,400 |
| **Lot:** 53 | **Total AV:** $127,500 | **Lot:** 5 | **Total AV:** $127,500 |
| **NON-EXEMPT** | | | **NON-EXEMPT** |

## ALL TAXES BELOW BASED ON ASSESSED VALUE OF $105,200

| 2016/2017 | **SCHOOL TAX** | $1,719.61 | | YEAR: 7/1-6/30 |
|---|---|---|---|---|
| | 1st Payment | $859.81 | PAID | DUE.: 9/1 |
| | 2nd Payment | $859.80 | OPEN+PEN | DUE.: 1/1 |

| 2016 | **TOWN TAX** | $465.24 | PAID | YEAR: 1/1-12/31 |
|---|---|---|---|---|
| | | | | DUE.: 4/1 |

| 2016/2017 | **VILLAGE TAX** | $813.99 | | YEAR: 6/1-5/31 |
|---|---|---|---|---|
| | 1st Payment | $407.00 | PAID | DUE.: 6/1 |
| | 2nd Payment | $406.99 | PAID | DUE.: 12/1 |

WATER ACCOUNT #  PRIVATE

POSTING DATE:  2/20/2017

SUBJECT TO CONTINUATION

Our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy. Neither our tax search nor our policy covers any part of streets on which the premises to be insured abut. Recent payments of any open items returned on this tax search may not be reflected on the public records. Therefore, please request the seller or borrower to have receipts for bills available at the closing.

MUNICIPAL DATA SERVICES, INC.



# MUNICIPAL DATA
## SERVICES

25 Hyatt Street – Suite 301
Staten Island, NY 10301
Phone – (718) 815-0707
Fax – (718) 815-9101
www.munidata.com

Continued

Set forth below are the unpaid taxes, water rates, assessments which are properly filed and indexed liens as of the date of this search.

**County:**    Westchester          **Title Number:**    NYTR NYT18567A

## PAYMENT INFORMATION

**SCHOOL TAX COLLECTOR**
Receiver of Taxes
Town of Rye
222 Grace Church Street
Port Chester NY, 10573
Telephone: 914 939-3558

**TOWN TAX COLLECTOR**
Receiver of Taxes
Town of Rye
222 Grace Church Street
Port Chester NY, 10573
Telephone: 914 939-3558

**VILLAGE TAX COLLECTOR**
Receiver of Taxes
Town of Rye
222 Grace Church Street
Port Chester NY, 10573
Telephone: 914 939-3558

Our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy. Neither our tax search nor our policy covers any part of streets on which the premises to be insured abut. Recent payments of any open items returned on this tax search may not be reflected on the public records. Therefore, please request the seller or borrower to have receipts for bills available at the closing.

**MUNICIPAL DATA SERVICES, INC.**

3092413          2469042

*Exhibit "B"*

MODIFICATION AGREEMENT
By and Between

BARTON PROPERTIES NEW YORK LLC, Seller
And
LUIS E. LOPEZ, Purchaser

This Modification Agreement by and between Barton Properties New York LLC , Seller and Luis E. Lopez, Purchaser is intended and does hereby modify the Purchase and Sale Agreement between the parties dated January 25, 2017 for the sale of the land and building and parking lot located at 7 and 10 Willow Street, Port Chester, NY.

The Purchase and Sale Agreement dated January 25, 2017 (the "Agreement") is hereby modified as follows

1    Section 3 of the Agreement shall be modified to provide that the contract deposit is in the sum of $10,000, receipt of which is acknowledged by the Seller. The balance of the purchase price in the sum of $1,225,000 shall be due and payable at the Closing

2    Section 7 of the Agreement is modified by eliminating Paragraph (d). The Purchaser does hereby waive the financing contingency.

3    Section 7 of the Agreement is modified by eliminating Paragraph (e). The Purchaser does hereby waive the environmental and due diligence contingencies.

4    Section 8 of the Agreement is modified by changing the closing date to "no later than April 15, 2017".

The parties agree that the title requirements set forth in Section 1, Paragraph (b) shall survive this modification.

Except as stated in this Modification Agreement the parties do hereby ratify and confirm the Agreement in its entirety

Seller:

BARTON PROPERTIES NEW YORK LLC

By: _____
    BENJAMIN BARTON
    Managing Member

Dated: February 24, 2017

Purchaser:

By: _____
    LUIS E. LOPEZ

Dated: February 20, 2017

PURCHASE AND SALE AGREEMENT


By and Between


BARTON PROPERTIES NEW YORK LLC, Seller

and

LUIS E. LOPEZ, Purchaser

# TABLE OF CONTENTS

Section 1.  Sale of the Property and Acceptable Title.................................................... 1

Section 2.  Base Purchase Price and Acceptable Funds ................................................ 3

Section 3.  Deposit and Escrow .................................................................................... 3

Section 4.  Condition of Property................................................................................... 3

Section 5.  Intentionally Deleted .................................................................................... 6

Section 6.  Title and Survey............................................................................................6

Section 7.  Conditions Precedent to Closing..................................................................7

Section 8. Closing...........................................................................................................9

Section 9.  Closing Deliverables....................................................................................9

Section 10.  Apportionments.........................................................................................10

Section 11.  Defaults and Remedies..............................................................................11

Section 12.  Casualty or Condemnation........................................................................12

Section 13.  Brokerage Commission.............................................................................12

Section 14.  Miscellaneous............................................................................................12

## EXHIBITS

Exhibit A      Legal Description

Exhibit B      Schedule of Tenants and Security Deposits Held by Seller

# PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into and is effective as of the 25 day of January, 2017 (the "Effective Date"), by and between BARTON PROPERTIES NEW YORK LLC, a New York limited liability company, having an address at 7 Willow Street, Port Chester, New York 10573 ("Seller"), and LUIS E. LOPEZ, 560 Westchester Avenue, Rye Brook, New York 10573. (the "Purchaser").

## RECITALS

A.      Seller is the owner of the Property (as defined below).

B.      Upon the satisfaction of, and subject to, the terms and conditions set forth in this Agreement, Seller has agreed to sell the Property to Purchaser, and Purchaser has agreed to purchase the Property from Seller.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Seller hereby agree as set forth below.

Section 1. Sale of the Property and Acceptable Title.

(a)      Sale of Property.  Subject to and in accordance with the terms and conditions contained in this Agreement, Seller agrees to sell, assign, convey, and transfer to Purchaser all of Seller's right, title and interest in and to the following real and personal property (collectively, the "Property"), and Purchaser hereby agrees to purchase and accept the Property:

(1)      Land.  Subject to the Permitted Exceptions (as defined below), fee title to those certain real properties situated in the Village of Port Chester, County of Westchester and State of New York, known as 7 & 10 Willow Street, Port Chester, New York, bearing Section 142.38/Block2/Lot Numbers 47 and 53 (the "Land").

(2)      Improvements.  The existing building located on the Land, including all fixtures, appliances, light fixtures, equipment, systems and improvements owned by Seller located on or used in connection with the aforesaid building (the "Improvements")

(3)      Appurtenances.  All rights, privileges and easements appurtenant to the Land, all development rights and air rights relating to the Land and any and all easements, rights-of-way and other appurtenances used in connection with the beneficial use and enjoyment of the Land, including all of the right, title and interest, if any, of Seller in and to the land in the bed of any public street, road or avenue, in front of or adjoining the Land, to the center line thereof, and all water, water rights and water stock and minerals and mineral rights of every kind (including without limitation, oil, gas and other hydrocarbon substances) on or under the Land owned by Seller and not previously conveyed or reserved of record, all of the foregoing, only to the extent that such rights and privileges can be conveyed.

1

(4)    Awards.  All right, title and interest to any unpaid awards for damages to the Land and/or Improvements resulting from any casualty, taking in eminent domain or by reason of change of grade of any street accruing after the Closing Date (as defined herein) to the extent not credited in reduction of the Purchase Price (as defined herein) or otherwise assigned to Purchaser. All such awards accruing prior to the Closing Date shall remain the property of Seller, subject to the provisions of Section 11 of this Agreement.

(5)    Personalty.  The parties agree that all personal property owned by Seller and remaining at the Property as of the Effective Date (collectively, the "Personalty"),is subject to change relative to use, operation and wear while this Agreement is in effect.

(b)    AcceptableTitle.  Seller shall convey and Purchaser shall accept, such title to the Property as is insurable (without special or additional premium) by New York Title Research, a company licensed to do business in the State of New York (the "Title Company"), as selected by Purchaser, subject, nevertheless, only to the following matters (collectively, the "Permitted Exceptions"):

(1)    Real estate taxes, assessments, water charges and sewer rents, not yet due and payable.  All taxes and charges shall be brought current as of the Closing Date and are subject to apportionment as more fully set forth below.

(2)    Any and all covenants, restrictions, agreements and easements of record as of the date hereof affecting the Property, provided same are not violated by the existing structures.

(3)    All zoning, except landmarks, historic or wetlands, building and environmental laws, ordinances, codes, restrictions and regulations, and any amendments thereto, heretofore or hereafter adopted by any municipal, state, federal or other authority having or claiming jurisdiction over the Property.

(4)    Party Wall agreement or agreements, if any.

(5)    Any state of facts which a current accurate survey or personal inspection of the Property would disclose provided same do not render title unmarketable.

(6)    Rights of any public authority or utility company to lay, maintain install and repair pipes, lines, poles, conduits, wires, cable boxes and other related equipment on, under, over or across the Property.

(7)    Minor variations between record lines of the Property and retaining walls, if any.

(8)    Variations between legal description and the description contained in the tax map.

(9)    Any and all notes and notices of violations of law or municipal ordinances, orders or requirements now or hereafter noted in, or issued by, any governmental department having authority as to land, housing, buildings, fire, health, environmental and labor conditions affecting the

Property, except Seller shall pay any and all fines, interest, penalties relating thereto.

(10)    Standard exceptions and exclusions from coverage normally contained in the form of the owner's title insurance policy to be issued by the Title Company.

Section 2.  <u>Base Purchase Price and Acceptable Funds</u>

(a)    <u>Base Purchase Price</u>.  The purchase price (the "Purchase Price") to be paid by Purchaser to Seller for the Property shall be ONE MILLION TWO HUNDRED ~~FIFTY~~ Thirty Five THOUSAND ($~~1,250,000.00~~ $1,235,000) DOLLARS, payable pursuant to the terms and conditions contained in this Agreement, but subject to adjustment and apportionment as provided below.

*$ 1,235,000*

*AM*

(b)    <u>Acceptable Funds</u>.  All monies payable under this Agreement, unless otherwise specified, shall be paid by:

(1)    Certified checks of Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or other as Seller may direct; or

(2)    Official bank checks drawn by any such banking institution, unendorsed and payable to the order of Seller, or other as Seller may direct; or

(3)    Wire transfer pursuant to wire instructions provided to Purchaser by Seller prior to Closing; or

(4)    As otherwise agreed to in writing by the parties.

Section 3.  <u>Deposit and Escrow</u>

On the Effective Date, Purchaser shall deliver a deposit to Alter & Brescia, LLP, Attn: Bruce R. Alter, Esq. ("Escrow Agent"), 550 Mamaroneck Avenue, Suite 401, Harrison, New York 10528, (if by check, subject to collection, if by wire, subject to receipt), in the amount of ~~SIXTY-TWO~~ Forty Seven THOUSAND FIVE HUNDRED AND 00/100 ($~~62~~47,500.00) DOLLARS (the "Deposit").  Escrow Agent shall retain possession of the Deposit until delivery or return thereof is permitted or required under this Agreement.  The Deposit shall be deposited in an IOLA non-interest bearing escrow account at Signature Bank.  The Deposit shall be held by the Escrow Agent pursuant to the terms of this Agreement.

In addition, Purchaser understands, acknowledges and agrees that the Deposit, shall immediately become non-refundable (except upon uncured breach or default by Seller or Seller's inability or refusal to comply with the terms of this Agreement, or as otherwise specifically provided for in this Agreement), and shall be delivered by Escrow Agent to Seller if Purchaser shall fail to close hereunder in accordance with the terms of this Agreement, subject in any event to compliance by the Escrow Agent with the notification and other obligations contained in the Escrow Agreement.  If the purchase and sale shall close pursuant to this Agreement, the Deposit shall be credited against the Purchase Price (as defined above) at Closing.

Section 4.  <u>Condition of Property</u>

3

(a)    <u>As-Is</u>. PURCHASER ACKNOWLEDGES THAT SELLER IS SELLING, AND PURCHASER SHALL ACCEPT, THE PROPERTY") IN ITS "AS IS" CONDITION (IN SUBSTANTIALLY SIMILAR CONDITION AS OF THE DATE OF THIS PURCHASE AND SALE AGREEMENT), NORMAL WEAR AND TEAR EXCEPTED WITHOUT ANY REPRESENTATION OR WARRANTY, STATED OR IMPLIED, WHATSOEVER BY SELLER OR ANY EMPLOYEES, REPRESENTATIVES OR AGENTS OF SELLER RELATING TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE EXPRESSED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH THE EXCEPTION OF THE EXPRESS, LIMITED REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT. Purchaser covenants and warrants to Seller that Purchaser has relied solely on Purchaser's own due diligence investigation in determining to purchase the Property. Purchaser acknowledges that it has had the opportunity to retain professional advisors, including legal counsel, in connection with its due diligence investigation of the Property and the entering into of this Agreement.

Seller makes no representations or warranties with regard to the condition of the Property (including the Improvements and Personalty), including, without limitation, the building's electrical, plumbing and heating systems, and Purchaser agrees to take title to the Property, irrespective of the physical condition of the Property and Improvements on the Closing Date.

(b)    <u>Merger</u>. It is understood and agreed that all oral or written statements, representations or promises, of any and all prior negotiations and agreements are superseded and hereby merged in this Agreement, which alone fully and completely expresses the parties' agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation, not embodied in this Agreement, made by the other. Seller shall not be liable for or be bound by any verbal or written statements, representations or information pertaining to the Property furnished by any real estate broker, agent, employee, servant or any other person, unless the same are specifically set forth herein. All prior oral or written statements, representations, or promises, if any, and all prior negotiations and agreements heretofore had between the parties hereto are superseded by this Agreement and are merged herein.

(c)    <u>Release</u>. Upon Closing, Purchaser, on behalf of himself, his officers, directors and his successors and assigns, does hereby forever release Seller, and his respective officers, directors, contractors and advisors (collectively, "Seller's Affiliates") of and from any and all losses, liabilities, damages, claims, demands, causes of action, costs and expenses ("Losses"), whether known or unknown, arising out of or in any way connected with the Property, including, without limitation, the condition of title to the Property, except as otherwise provided herein, by upon Closing Purchaser does hereby forever release Seller and Seller's Affiliates of and from any environmental claims and causes of action existing now or hereafter created or enacted, whether at common law or by federal, state, county, or municipal law or ordinance. Purchaser agrees never to commence, aid in any way, or prosecute against Seller and Seller's Affiliates and their respective successors and assigns, any action or other proceeding based upon any Losses covered in this paragraph except as required by law. The provisions of this subparagraph (c) shall survive Closing (hereinafter defined).Purchaser expressly waives any rights or benefits available to it with respect to the foregoing release under any provision of applicable law which generally provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time the release is agreed to,

4

which, if known to such creditor, would materially affect a settlement. Purchaser, by the execution of this Agreement, acknowledges that Purchaser fully understands the foregoing, and with this understanding, nonetheless elects to and does assume all risk for claims known or unknown, described in this Section 4.

(d)    Indemnification. From and after the Closing, Purchaser, on behalf of himself, his officers, directors and his successors and assigns, will indemnify, release and hold harmless Seller, and its respective officers, directors, contractors and advisors (collectively, "Seller's Affiliates") of and from any and all losses, liabilities, damages, claims, demands, causes of action, costs and expenses ("Losses"), whether known or unknown, arising out of or in any way connected with the Property, including, without limitation, the condition of title to the Property, except as otherwise provided herein, by the execution of this Agreement, Purchaser will indemnify and hold harmless Seller and Seller's Affiliates of and from any environmental claims and causes of action existing now or hereafter created or enacted, whether at common law or by federal, state, county, or municipal law or ordinance. Purchaser agrees never to commence, aid in any way, or prosecute against Seller and Seller's Affiliates and their respective successors and assigns, any action or other proceeding based upon any Losses covered in this paragraph. The provisions of this subparagraph shall survive Closing (hereinafter defined). Purchaser expressly waives any rights or benefits available to it with respect to this indemnification under any provision of applicable law which generally provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time the release is agreed to, which, if known to such creditor, would materially affect a settlement. Purchaser, by the execution of this Agreement, acknowledges that Purchaser fully understands the foregoing, and with this understanding, nonetheless elects to and does assume all risk for claims known or unknown, described in this Section 4.

(e)    Representations. Seller represents and warrants that the following are true and correct as of the Effective Date and the Closing Date:

(i)    The Property shall be delivered clear of any and all leases, tenancies or occupants of any kind whatsoever, and/or any rights of occupants and free of debris, other than those Tenants set forth in Exhibit B hereof.

(ii)    All fixtures and Personalty included in this sale, if any, are owned by Seller free and clear of any conditional bills of sale, chattel mortgages, security agreements or financing statements or other liens or security interests or any kind.

(iii)    Seller does not employ any personnel at the Property.

(iv)    Seller has not entered into any service, maintenance or labor contracts with respect to the Property.

(v)    All water, sewer, gas, electricity, telephone and other utilities serving the Property are supplied directly to the Property by facilities of public utilities.

(vi)    No services, material or work has been supplied to Seller or Seller's contractors, subcontractors or materialmen with respect to the Property for which payment has not been made in full or for which payment is not yet due and payable.

(vii)    Neither the execution and delivery of this Agreement nor the consummation of the transactions provided for herein will conflict with or result in a breach of or accelerate the performance required by any terms of any mortgage, deed of trust or any other agreement which Seller is a party, or constitute default thereunder, or result in the creation of any lien or encumbrance upon the Property to be transferred hereunder.

(viii)    No person, firm or entity has any rights in or to acquire the Property or any part thereof including that limited to a right of first refusal to acquire the Property or any part thereof or any option to acquire the Property or any part thereof.

(ix)    There are no union contracts affecting the Property.

(x)    Seller represents there is a water meter at the Premises and Seller will arrange for a final water reading before the Closing, if Seller is not exempt from water and sewer charges.

Section 5.   Intentionally Deleted

Section 6.   Title and Survey.

(a) (i) Purchaser, at Purchaser's sole cost and expense, shall order an examination of title and shall cause a copy of the title report, and all updates, to be forwarded to Seller's attorney concurrently with its receipt of same.  Not later than thirty (30) days from the Effective Date (the "Title Objection Date"), Purchaser may provide Notice to Seller that Purchaser disapproves of one or more matters affecting title to the Property and request that Seller correct such deficiency, provided, however, that the existence of the Permitted Exceptions and the standard exceptions on Purchaser's title commitment shall not be considered unsatisfactory title conditions.  The delivery by the Title Company of the title report to Seller's counsel shall be deemed notice of the title objections contained therein, exclusive however of all Permitted Exceptions.  All matters affecting title to the Property which are not disapproved by Purchaser on or before the Title Objection Date, and which have been disclosed to Purchaser in the title commitment issued by Purchaser's Title Company shall be deemed to be additional Permitted Exceptions for the purposes of this Agreement. In the event Seller receives no such Notice, all matters affecting title to the Property shall be deemed Permitted Exceptions.

(ii)    If Purchaser timely objects to a title matter, Seller shall, in the exercise of its sole discretion, promptly thereafter, advise Purchaser in writing whether Seller intends to correct the title objection or provide endorsement coverage with respect thereto prior to the Closing. In such event, Seller shall be entitled to reasonable adjournments of the Closing (in no event to exceed ninety (90) days in the aggregate), to enable Seller to cure any title exceptions, defects or objections and to convey the Property to Purchaser in accordance with the terms of this Agreement.  Seller shall be deemed to have cured any title exceptions, defects or objections provided Seller arranges with the Title Company to (i) insure Purchaser against any monetary loss as a result of such exceptions, defects or objections, or (ii) to remove such exceptions, defects or objections as such from the policy of title insurance issued to Purchaser.  Seller shall be obligated to repay and satisfy in full any mortgage(s) encumbering the Property and remove any monetary lien, judgment, fines, interest or penalties or encumbrance of, affecting or with respect to the Property.

(iii)    Seller agrees that it will not, between the Effective Date and the Closing Date,

6

intentionally cause any matters to affect title to the Property which would constitute further exceptions under the Title Policy.

(iv)    If Seller shall be unable to convey title to the Property at the Closing in accordance with the provisions of this Agreement or if Purchaser shall have any other grounds under this Agreement for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may at any time accept such title to the Property as Seller can convey, without reduction of the Purchase Price or any credit or allowance on account thereof and without any claim against Seller with respect to this Agreement or otherwise. The acceptance by Purchaser of the Deed (hereinafter defined) shall be deemed to be full performance of and discharge of every agreement and obligation on Seller's part to be performed under this Agreement with respect to the Property except those representations and warranties and other obligations that specifically survive the Closing Date.

(v)    In the event the Title Company is unable or unwilling to insure to Purchaser an ALTA standard owner's policy of title insurance (the "Title Policy") in the amount of the Purchase Price, insuring Purchaser's title to the Property, subject only to the Permitted Exceptions and the standard printed exceptions to title in an ALTA standard (and Seller is unable to provide Purchaser with a substitute title policy from another reputable title company licensed to do business in the state of New York) and Purchaser elects not to proceed with the Closing of this transaction, Purchaser's sole remedy shall be to declare this Agreement terminated, at which time the Deposit shall be returned to Purchaser, together with the net cost of Purchaser's title examination and survey.

(vi)    If on the date of Closing there may be any liens or encumbrances which the Seller is obligated to pay and discharge, the Seller may use any portion of the balance of the Purchase Price to satisfy the same, provided the Seller shall simultaneously either deliver to the Purchaser at the Closing instruments in recordable form and sufficient to satisfy such liens and encumbrances of record together with the cost of recording or filing said instruments or, provided that the Seller has made arrangements with the Title Company in advance of Closing, Seller will deposit with the Title Company sufficient monies, acceptable to and required by it to insure obtaining and the recording of such satisfactions and the issuance of title insurance to the Purchaser either free of any such liens and encumbrances, or with insurance against enforcement of same out of the insured Property. The Purchaser, if request is made within a reasonable time prior to the date of the Closing, agrees to provide at the Closing separate certified or bank checks as requested, aggregating the amount of the balance of the Purchase Price, to facilitate the satisfaction of any such liens or encumbrances. The existence of any such liens and encumbrances shall not be deemed objections to title if the Seller shall comply with the foregoing requirements. Notwithstanding the foregoing, Seller shall have the continuing right to object to a title matter first appearing after the expiration of the Title Objection Date in any update or amendment to the report or abstract prepared by the Title Company.

(b)    Survey. Purchaser may cause to be prepared a current survey. In the event Purchaser elects to cause a survey to be prepared, Purchaser shall deliver a copy of the survey to Seller. The cost of any survey shall be borne solely by Purchaser.

Section 7.Conditions Precedent to Closing.

The Closing of this transaction on the Closing Date and Seller's obligation to sell and Purchaser's obligation to acquire the Property shall, in addition to any other conditions set forth

7

herein, be conditional and contingent upon satisfaction by the other party, or waiver by the other party, as applicable, of each and all of the below listed conditions:

(a)    Closing Documents and Purchase Price. Seller and Purchaser, to the extent necessary, shall each have tendered all Closing Documents (hereinafter defined) and all other required deliveries to the other and Purchaser shall have tendered the Purchase Price (subject to prorations) to Seller.

(b)    Compliance with Agreement. Seller and Purchaser shall each have performed and complied in all material respects with all of their respective covenants and conditions contained in this Agreement, and no event shall have occurred which if it continued uncured would, with the passage of time or notice or both, constitute a default under this Agreement by either party.

(c)    Bankruptcy Court Approval. The Seller has filed a petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, Case No. 16-23715(rdd). The Seller will seek approval of this Agreement from the Bankruptcy Court pursuant to §363 of the Bankruptcy Code, which approval shall be obtained no later than April 15, 2017, unless further agreed upon by the parties in writing. In the event approval of this Agreement is not obtained by the date agreed upon or the Bankruptcy Court denies approval of this Agreement, this Agreement is null and void. The approval of the sale by the Bankruptcy Court is dependent upon a finding that the sale constitutes the highest and best offer for the property. Should the Court find that another offer constitutes the highest and best offer for the property, and the sale represented by this Agreement is not approved or authorized by the Bankruptcy Court, then and in such an event Purchaser shall receive, at the closing of the sale to such other purchaser, a TEN THOUSAND ($10,000.00) DOLLAR, "break-up fee" to compensate Purchaser for his expenses in connection with this matter. Other than the return of his deposit, Purchaser shall have no other rights against Seller if this Agreement is not approved.

(d)    Financing. The obligation of Purchaser to purchase under this Agreement is conditioned upon issuance on or before March 31, 2017 of a written commitment from an institutional lender pursuant to which such institutional lender agrees to make a first mortgage loan to Purchaser at Purchaser's sole cost and expense of at least ONE MILLION ($1,000,000.00) DOLLARS, at market rate interest for a term of at least 15 years, or such lesser sum or shorter term as Purchaser shall be willing to accept.

(e)    Environmental and Due Diligence Period. This sale is conditioned upon Purchaser receiving satisfactory engineering inspections and environmental reports. Purchaser will immediately conduct such examinations, including a Phase II review, if desired. Furthermore Purchaser shall have until March 31, 2017 to conduct all other investigations concerning the premises and its permitted use, (the Due Diligence Period). All of the above shall be completed to Purchaser's reasonable satisfaction on or before March 31, 2017. Should any of the above inspections be unsatisfactory to Purchaser, in its sole reasonable discretion, then Purchaser shall have the right to cancel this transaction on or before March 31, 2017.

(f)    Violations. Seller shall remove all municipal and governmental violations against the Property prior to the closing. Notwithstanding such obligation Seller shall have the right to leave in escrow a sum reasonable necessary to complete remediation and certification that the violations have

8

been removed. Such reasonable amount shall be agreed to between the attorneys for the respective parties after consulting with Seller's architect. Such violations, should they still exist at the time of closing, shall not be a bar to closing, providing the above-procedure is followed.

(g)     Leases and Tenancies.  Seller shall deliver, prior to the closing, true copies of signed leases for all tenants set forth in Exhibit B and shall deposit with Purchaser the amount of the security deposit for each tenant.

Section 8. Closing.

(a)     Closing Date.  The closing of this transaction shall take place upon the parties obtaining an order of the United States Bankruptcy Court for the Southern District of New York approving this agreement and the transfer of title to Purchaser by Seller, by no later than April 30, 2017.

(b)     Time and Place.  The Closing shall take place on the Closing Date at the offices of Seller's counsel, Alter & Brescia, LLP. 550 Mamaroneck Avenue, Suite 401, Harrison, New York 10528 or at such other place as the parties may mutually agree, provided that it is in the County of New York or County of Westchester.

Section 9. Closing Deliverables.

(a)     Except as set forth below, on the Closing Date, Seller shall deliver, or cause to be delivered, to Purchaser the following fully executed documents and/or items, acknowledged where appropriate (collectively, the "Closing Documents"):

(1)     Deed.  A bargain and sale deed without covenants containing the covenant required by Section 13 of the New York Lien Law (the "Deed"), executed and acknowledged by Seller and in proper statutory form for recording, sufficient to convey the Property to Purchaser, subject to and in accordance with the provisions of this Agreement.

(2)     Transfer Taxes.  The requisite real estate transfer tax returns (Form TP-584 and Form RP-5217) and the applicable real estate transfer taxes required under Article 31 of the New York Tax Law and any other transfer tax due and payable and imposed by statute on the Seller in connection with the transfer of the Property.  Purchaser shall have no obligation to pay the foregoing transfer taxes.

(3)     Non-Foreign Status Affidavit.  An Affidavit of Non-Foreign Status executed by Seller.

(4)     Closing Statement.  A counterpart original of the closing statement setting forth the Purchase Price, the closing adjustments and application of the Purchase Price as adjusted.

(5)     Title Documents.  Any affidavits and/or consents reasonably required by Purchaser's Title Company to omit any exceptions, other than Permitted Exceptions, from Purchaser's Title Policy.

(6)     Possession.  The Property shall be delivered fully occupied by the Tenants set

forth in Exhibit B, each of whom shall have executed and estoppel letter in a form prepared by Purchaser's attorney and reasonably satisfactory to Seller's attorney.

Section 10. Apportionments.

The following items shall be prorated as of the Closing and such prorations shall be credited to the appropriate party in determining the amounts payable pursuant to the Purchase Price. Such prorations shall be made on the basis of a 360-day year, as of 12:01 a.m. on the Closing Date.

(a)    Property Taxes. All real property taxes, if any, which are due and payable on or before the Closing shall be paid by Seller on or before the Closing Date and any such amounts so paid which relate to any period following the Closing shall be credited to Seller. All real property taxes for the current year, not yet due and payable shall be prorated as of the Closing (based upon the current year's tax bill, if available (or the previous year's tax bill if the current year's tax bill is not available), and the amount thereof which relates to any period prior to the Closing shall be credited to Purchaser. Any such proration of taxes for the current year shall be subject to adjustment following issuance of final tax bills. This requirement of final adjustment of tax bills shall survive Closing. Seller shall be entitled to retain for its own account any and all refunds (whenever received) of taxes and assessments paid by Seller prior to the Closing (duly prorated as of the Closing Date), including without limitation, any of the same that shall result from pending property tax appeals relating to the Property. The net amount received (or tax adjustment realized) by either party as a result of a tax protest for the tax period comprising the Closing shall be prorated between the parties as of the Closing. To the extent any refund for a period prior to Closing is received by Purchaser, such refund shall be promptly paid to Seller. The provisions of this subparagraph 9(a) shall survive Closing.

(b)    Assessments. All assessments, special assessments and other like charges actually imposed against the Property, or any part thereof, by reason of roadways, utility lines, streets, alleys or other improvements in existence, under construction or planned and which are due and payable as of the Closing Date shall be prorated to such date. All such assessments, special assessments and other charges affecting the Property and payable after the Closing Date shall be the sole responsibility of Purchaser. All refunds of assessments paid by Seller prior to the Closing Date shall be retained by Seller. To the extent any refund for a period prior to Closing is received by Purchaser, such refund shall be promptly paid to Seller. The provisions of this subparagraph 10(b) shall survive Closing.

(c)    Utility Charges. Prepaid water, sewer, and other utility charges allocable to the period from and after the Closing Date (if any) shall be credited to Seller, and accrued and unpaid water, sewer, and other utility charges allocable to the period prior to the Closing Date shall be credited to Purchaser. If any of the foregoing utility charges are subject to a meter, then proration at the Closing shall be based on the last available reading or an estimate of the amount due at Closing, subject to adjustment after the Closing when the next reading is available. Seller shall arrange for meter readings for all utilities within ten (10) days of the Closing. Seller will reasonably cooperate with Purchaser in transferring all utility accounts, if any. The provisions of this subparagraph 10(c) shall survive Closing.

The foregoing prorations shall be made as of the Closing Date based on the best information

and estimates available to the parties at the time. Such prorations shall be considered final and binding for all purposes absent material mistake of fact. If any of the prorations described in this Section 10 cannot be calculated accurately on the Closing Date, then the same shall be calculated as soon as reasonably possible thereafter and either party owing the other party a sum of money based on such subsequent prorations shall promptly pay said sum to the other party. A final closing adjustment shall be made by Purchaser and Seller within thirty (30) days after the necessary information is available to the parties, and to the extent that any additional payment or repayment is indicated by the final adjustment, the payment or repayment shall be made within thirty (30) days after the final adjustment is made. If a dispute shall arise between Purchaser and Seller regarding the final closing adjustments and the parties are unable to resolve the same, the matter shall be referred to arbitration and the determination of such arbitrator shall be final and binding upon the parties. The fees and expenses shall be borne by the parties equally. If either party owing funds to the other after the Closing Date pursuant to this Section does not remit them within thirty (30) days after demand therefor (which demand shall also include invoices or other appropriate documentation in support thereof), such funds shall thereafter bear interest at a "Default Rate" equal to two (2%) percent above the interest rate as announced from time to time by JPMorgan Chase Bankas its "prime rate", as the same shall fluctuate from day to day, or, if lesser, the maximum rate permitted by applicable New York law.

Section 11.<u>Default and Remedies</u>

A.   <u>PURCHASER'S DEFAULT</u>.  IF PURCHASER IS IN DEFAULT OF THIS AGREEMENT AND SELLER ELECTS TO TERMINATE THIS AGREEMENT DUE TO PURCHASER'S DEFAULT, THE DEPOSIT (PLUS ACCRUED INTEREST, IF ANY) SHALL BE FORFEITED BY PURCHASER AND RETAINED BY SELLER, SUBJECT TO AND IN ACCORDANCE WITH THE PROVISIONS OF THE ESCROW AGREEMENT, AND BOTH PARTIES SHALL THEREAFTER BE RELEASED FROM ALL FURTHER OBLIGATIONS UNDER THIS AGREEMENT.

PURCHASER AND SELLER ACKNOWLEDGE THAT SELLER'S DAMAGES WOULD BE DIFFICULT OR IMPOSSIBLE TO DETERMINE IN THE EVENT OF PURCHASER'S FAILURE TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT AND THAT THE DEPOSIT IS A REASONABLE ESTIMATE OF SUCH DAMAGES. THE DEPOSIT SHALL, THEREFORE, BE LIQUIDATED DAMAGES TO SELLER AND RETENTION THEREOF SHALL BE SELLER'S SOLE AND EXCLUSIVE REMEDY FOR PURCHASER'S FAILURE TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT IN THE EVENT SELLER ELECTS TO TERMINATE THIS AGREEMENT. SELLER EXPRESSLY WAIVES THE REMEDIES OF SPECIFIC PERFORMANCE AND ADDITIONAL DAMAGES.

B.   <u>SELLER'S DEFAULT</u>.  IF SELLER IS IN DEFAULT OF OR HAS BREACHED ANY COVENANT CONTAINED IN THIS AGREEMENT, PURCHASER MAY ELECT:

(i)   TO TREAT THIS AGREEMENT AS TERMINATED, IN WHICH CASE THE DEPOSIT (PLUS ACCRUED INTEREST, IF ANY) AND THE REASONABLE EXPENSES OF EXAMINATION OF TITLE TO THE PROPERTY AND OF ANY SURVEY AND SURVEY INSPECTION CHARGES SHALL BE RETURNED TO PURCHASER; OR,

(ii)   TO TREAT THIS AGREEMENT AS BEING IN FULL FORCE AND EFFECT AND, EXCEPT AS SPECIFICALLY OTHERWISE PROVIDED IN THIS AGREEMENT, PURCHASER SHALL HAVE THE RIGHT ONLY TO AN ACTION FOR SPECIFIC PERFORMANCE.   PURCHASER EXPRESSLY WAIVES THE RIGHT TO DAMAGES OF ANY NATURE, UNLESS SPECIFIC PERFORMANCE IS UNAVAILABLE DUE TO SELLER'S ACTS OR OMISSIONS.

Section 12. <u>Casualty or Condemnation</u>

If prior to the Closing Date, twenty (20%) percent or more of the Improvements of the Property shall be destroyed or substantially damaged, or shall become the subject of any proceedings, judicial, administrative, or otherwise, with respect to twenty (20%) percent or more taking of the Improvements or Property by eminent domain, condemnation or otherwise, Seller shall promptly notify Purchaser thereof and Purchaser, at its option, may within fifteen (15) days after receipt of such notice elect to terminate this Agreement by giving Seller written notice thereof in which event the parties hereto shall be relieved and released of and from any further duties, obligations, rights, or liabilities hereunder and the Deposit shall be returned to Purchaser. If the Closing Date is within the aforesaid fifteen (15) day period, then the Closing shall be extended to the next business day following the end of said fifteen (15) day period. If less than twenty (20%) percent of the Property is destroyed or substantially damaged or subject to taking, this Agreement shall remain in full force and effect and the purchase contemplated herein, less any portion of the Property taken by eminent domain or condemnation, shall be consummated with no further adjustment or modification of the Purchase Price or otherwise and at the Closing Seller shall assign, transfer, and set over to Purchaser all the right, title, and interest of Seller in and to or any condemnation awards, eminent domain awards or insurance proceeds as a result of the destruction of the Premises by fire or other casualty that have been or may thereafter be made.

Section 13. <u>Brokerage Commission</u>

Purchaser and Seller hereby represent and warrant to the other that each has dealt with no other broker except for CJ Pagano and Sons, Inc. in connection with the transaction contemplated in this Agreement (the "Broker"). Purchaser and Seller hereby agree to defend, indemnify and hold the other harmless from and against any and all claims of any person or entity arising out of the breach of their respective parts of any representation or agreement contained in this Section, other than the Broker, claiming a brokerage fee or commission through the Purchaser.  Seller shall be solely responsible for payment to the Broker. The provisions of this Section 13 shall survive Closing.

Section 14. <u>Miscellaneous</u>

(a)   <u>Entire Agreement</u>. This Agreement supersedes all prior discussions, agreements and understandings between Seller and Purchaser and constitutes the entire agreement between Seller and Purchaser with respect to the transaction herein contemplated.  This Agreement may be amended or modified only by a written instrument executed by Seller and Purchaser.

(b)   <u>Waiver</u>.  Each party hereto may waive any breach by the other party  of any of the

12

provisions contained in this Agreement or any default by such other party in the observance or performance of any covenant or condition required to be observed or performed by it contained herein; PROVIDED, ALWAYS, that such waiver or waivers shall be in writing, shall not be construed as a continuing waiver, and shall not extend to or be taken in any manner whatsoever to affect any subsequent breach, act or omission or default or affect each party's rights resulting there from. No waiver will be implied from any delay or failure by either party to take action on account of any default by the other party. No extension of time for performance of any obligations or acts shall be deemed an extension of the time for performance of any other obligations or acts.

(c)    <u>Further Assurances</u>.  Each party hereto shall do such further acts and execute and deliver such further agreements and assurances as the other party may reasonably require to give full effect and meaning to this Agreement.

(d)    <u>Notices</u>.  All notices and demands given or required to be given by any party hereto to any other party ("Notices") shall be in writing and shall be delivered in person or sent by telecopy with electronic confirmation of receipt thereof and with concurrent mailing by U.S. Postal Service delivery, or by a reputable overnight carrier that provides a receipt, such as Federal Express or UPS, or by registered or certified U.S. mail, postage prepaid, addressed as follows (or sent to such other address as any party shall specify to the other party pursuant to the provisions of this Section):

TO SELLER:

Barton Properties New York LLC
7 Willow Street
Port Chester, New York 10573
Tel: (203)  898-5487


With a contemporaneous copy to:

Bruce R. Alter, Esq.
Alter & Brescia, LLP
550 Mamaroneck Avenue, Suite 401
Harrison, New York 10528
Tel:  (914) 670-0030
Email: altergold@aol.com


TO PURCHASER:

Luis E. Lopez
560 Westchester Avenue
Rye Brook, New York 10573
Telephone: (914) 826-1041

With a contemporaneous copy to:

Mario DeMarco, Esq.
1 Gateway Plaza, #2A
Port Chester, New York
Tel: (914) 937-2213
Email: demarcomario@aol.com

All Notices delivered in the manner provided herein shall be deemed given upon actual receipt (or attempted delivery if delivery is refused). Any notice or other communication under this Agreement may be given on behalf of a party by an attorney for such party.

(f)    Successors and Assigns. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, heirs, administrators and assigns, provided, however, that Purchaser may not assign this Agreement, in whole or in part without the written consent of Seller. Notwithstanding the foregoing, the Seller will not withhold its consent to an assignment of this Agreement by the Purchaser to a legal entity that is MAJORITY owned by the Purchaser.

(g)    Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State in which the Property is located and the venue of any legal action filed in connection herewith shall be in the United States Bankruptcy Court for the Southern District of New York.

(h)    No Third Parties Benefited. The parties do not intend to confer any benefit on any person, firm, or corporation other than the parties to this Agreement, except as and to the extent otherwise expressly provided herein.

(i)    Legal Fees. In the event either party hereto fails to perform any of its obligations under this Agreement or in the event a dispute arises concerning the meaning or interpretation of any provision of this Agreement, the party not prevailing in such dispute shall pay any and all costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable legal fees.

(j)    Construction. The section titles or captions in this Agreement are for convenience only and shall not be deemed to be part of this Agreement. All pronouns and any variations of pronouns shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the identity of the parties may require. Whenever the terms referred to herein are singular, the same shall be deemed to mean the plural, as the context indicates, and vice versa. This Agreement shall not be construed as if it had been prepared only by Purchaser or Seller but rather as if both Purchaser and Seller had prepared the same. If any term, covenant, condition, or provision of this Agreement or the application thereof to any person or circumstance shall, at any time or to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to

14

persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and shall be enforced to the fullest extent permitted by law.

(k)     <u>No Recording</u>.  Purchaser covenants and agrees not to record this Agreement or any memorandum of this Agreement and agrees that any such recording by Purchaser shall be deemed a material default hereunder.

(l)     <u>Confidentiality and Indemnification</u>.  Purchaser covenants and agrees that, except as required by law: (i) all written information provided to it by Seller in connection with the Property or resulting from Purchaser's inspections of the Property and review of relevant materials will be held in <u>strict</u> confidence by it, its attorneys, accountants, consultants, lenders, business associates (including potential equity partners), agents and employees, (ii) upon Seller's written request, Purchaser will return to Seller all such written information provided by Seller to Purchaser in the event the transaction contemplated by this Agreement is not consummated, and (iii) Seller has made no representation or warranty regarding the accuracy or completeness of the materials provided to Purchaser and Purchaser will conduct Purchaser's own due diligence inquiry with respect to the Property. Purchaser further agrees to indemnify and hold Seller harmless from and against any and all claims or damages, including reasonable attorneys' fees, resulting from Purchaser's breach of the covenant contained herein and/or from its or its agents' entrance onto the Property.  The indemnification contained herein shall, without limitation, survive the termination of this Agreement. Purchaser acknowledges that if this provision is breached, Seller could not be made whole by monetary damages alone.  Accordingly, the Seller, in addition to any other remedy to which it may be entitled to by law or in equity, shall be entitled to injunctive relief.  No remedy or election shall be deemed exclusive but, whenever possible, shall be cumulative with all remedies available at law or in equity.

(m)     <u>Consents and Approvals</u>.  Both Seller and Purchaser represent and warrant to the other that each have obtained all requisite consents and approvals (other than the Approvals referenced in Section 7 hereof), whether required by internal operating procedures or otherwise, for entering into this Agreement and closing the transaction contemplated hereby.

(n)     <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.

(o)     <u>Jury Trial Waiver</u>.  Purchaser and Seller each waive any and all rights it may have to a trial by jury in any action with respect to this Agreement or the transactions contemplated hereby.

(p)     <u>Exhibits</u>.  All of the Exhibits referenced in this Agreement are attached hereto and incorporated as part of this Agreement and shall have the same meaning as if they were incorporated fully within the text of this Agreement.

(q)     <u>No Liability</u>.  Notwithstanding anything to the contrary set forth in this Agreement, the Closing Documents or any other documents contemplated by this transaction (collectively, the "Transaction Documents"), in the event Seller is in default of or has breached any covenant contained in the Transaction Documents, Purchaser will seek redress, if any, solely from Seller's interest in the Property, including the proceeds of the sale thereof and no other property or assets of

15

Seller or Seller's Affiliates or any of their successors and assigns shall be subject to levy, execution or other enforcement procedure for the satisfaction of any claim under the Transaction Documents, whether arising by contract, tort, or otherwise.

      (r)    <u>Inspection.</u> Purchaser and its agents, architects and engineers shall have the right to inspect the Property at reasonable times upon reasonable notice to Seller. Such access to be coordinated between Purchaser and Broker.

      (s)    <u>Execution.</u> This Agreement shall not be binding or effective unless and until it has been duly executed and delivered by Seller and Purchaser and approved by the United States Bankruptcy Court for the Southern District of New York.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

Seller:

BARTON PROPERTIES NEW YORK LLC

By: _____
     BENJAMIN BARTON
     Managing Member

Purchaser:

By _____
     LUIS E. LOPEZ

17

## RIDER TO CONTRACT OF
## SALE BARTON PROPERTIES TO LOPEZ

1. It is understood and agreed that paragraphs 3,11, 14(a) & 7 of the Contract of Sale notwithstanding, this agreement is subject to the Purchaser obtaining a firm conventional mortgage loan from a lending institution in a sum not less than $1,000,000.00 for a period of not less than 15 years with interest at the prevailing rate at closing of title.

   The purchaser warrants that he will diligently pursue the said mortgage application and furnish the Seller with all reports, documents, verifications or fees in connection therewith. In the event the Purchaser does not obtain said conditional mortgage by March 31, 2017 after the exercise of good faith, then this contract shall be null and void and the Seller's sole liability hereunder shall be the return of the down payment monies paid pursuant to this contract.

2. The Purchaser has previously paid to Seller the sum of $5,000.00 as and for the roof repair and $10,000.00 for a down payment.

   ~~At closing, the Seller shall credit the Purchaser $15,000.00 for these amounts.~~
   The purchase price has been reduced to reflect such credit

_____ Seller        _____ Purchaser

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                              Chapter 11

    Barton Properties New York LLC,                  Case No. 16-23715(rdd)

                                   Debtor.
-------------------------------------------------------------X

**ORDER (i) PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 6004, AUTHORIZING AND APPROVING PURCHASE AND
SALE AGREEMENT OF DEBTOR'S REAL PROPERTY; (ii) AUTHORIZING
PAYMENT TO THE SECURED CREDITOR AS WELL AS REAL ESTATE TAXES AT
THE CLOSING; (iii) AUTHORIZING PAYMENT OF THE EARNED BROKER'S
COMMISSION AT THE CLOSING; (iv) AUTHORIZING THE ASSIGNMENT OF THE
DEBTOR'S COMMERCIAL TENANT LEASE WITH LUIS LOPEZ; (v) GRANTING
GOOD FAITH PURCHASER STATUS TO PURCHASER; AND (vi) GRANTING
RELATED RELIEF PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE**

       **UPON** the motion, dated February 27, 2017 (the "Motion") of Barton Properties

New York LLC, the debtor and debtor in possession herein (the "Debtor"), for an order

(i) pursuant to Sections 363(b), (f) and (m) of Title 11 of the United States Code (the "

Bankruptcy Code") and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule(s)")

6004 authorizing and approving the sale of Debtor's real property located and known as

7 and 10 Willow Street, Port Chester, New York (the "Property"), to Luis E. Lopez

("Lopez" or "Purchaser"), to be conveyed free and clear of all liens, claims and

encumbrances, (ii) authorizing the payment, upon closing, of undisputed claims secured

by the Property and of priority real estate taxes, (iii) authorizing the payment, upon

closing, of the earned broker's commission, (iv) authorizing and approving the

assignment of the Debtor's commercial tenant lease (the "Lease") with Luis Lopez, (v)

granting Good Faith Purchaser Status to Purchaser; and (vi) related relief pursuant to

Section 365 of the Bankruptcy Code; and there being due and sufficient notice of the

Motion; and upon all objections filed with respect to the requested relief; and upon the hearing held by the Court on the Motion on March 28, 2017; and, after due deliberation and sufficient cause appearing

**THE COURT HEREBY FINDS AND CONCLUDES:**

A.     That the Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. §§157(a)-(b) and 1334(b) and the Standing Order of Referral of Cases to Bankruptcy Judges for the Southern District of New York dated July 10, 1984, as amended.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

B.     That venue of this proceeding in this district is proper under 28 U.S.C. §§1408 and 1409.

C.     That: (i) adequate notice of the Motion, the hearing thereon and the proposed sale has been given pursuant to Bankruptcy Rules 2002 and 6004, (ii) the proposed sale to the Purchaser, as set forth in the Purchase and Sale Agreement dated January 25, 2017 and the Modification Agreement dated February 23, 2017 between Debtor and Lopez (collectively the "Sale Agreement") is the highest and best offer for the Property under the circumstances, (iii) the Debtor has established good and sufficient business justification for the proposed sale, which is in the best interests of the Debtor's estate and creditors, (iv) the Debtor has established one or more of the grounds for the sale to be free and clear of liens, claims and encumbrances under Section 363(f) of the Bankruptcy Code, (v) Purchaser is a good faith purchaser within the meaning of 11 U.S.C. Section 363(m), and (vi) under Section 365 of the Bankruptcy Code, the Debtor may assume and assign the tenant lease to Purchaser.

2

**BASED UPON THE FOREGOING FINDINGS, IT IS HEREBY,**

**ORDERED,** that the findings set forth above and conclusions of law stated herein

shall constitute the Court's findings of fact and conclusions of law pursuant to

Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule

9014.  To the extent any finding of fact later shall be determined to be a conclusion of

law, it shall be so deemed.  To the extent any conclusion of law later shall be

determined to be a finding of fact, it shall be so deemed, and it is further

**ORDERED,** that the Motion is granted as provided herein; and it is further

**ORDERED,** that the Sale Agreement is approved in its entirety; and it is further

**ORDERED**, that the sale, transfer and conveyance of the Property pursuant to

the Sale Agreement need not be subject to any auction; and it is further

**ORDERED,** that Lopez may assign all rights and interests as Purchaser under

the Sale Agreement to a legal entity that is MAJORITY owned by Purchaser, as

provided for in the Sale Agreement, and, in such event, the deposit of Lopez may be

credited to said assignee, and it is further

**ORDERED**, that the Debtor is authorized and empowered to sell, transfer,

convey and/ or assign to the Purchaser under the Sale Agreement all of its right, title

and interest in the Property, namely the parcels of improved real property located and

known as 7 and 10 Willow Street, Port Chester, New York (as more fully described in

the Sale Agreement), free and clear of all liens, security interests, debts, causes of

action, obligations, leases, leaseholds or related interest of any kind liabilities, interests,

encumbrances, charges, mortgages and claims of any kind, nature, description or kind

whatsoever whether fixed or contingent, perfected or unperfected except as expressly

provided in the Sale Agreement (collectively, the "Liens"), with the sale proceeds to be

3

distributed in accordance with this Order.  Any Liens existing against the Property at the time of closing of the sale, but not satisfied at such closing, shall attach to the remaining proceeds of the sale in the same priority, with the same validity and enforceability, and subject to the same defenses as they existed on the Property immediately before such closing and shall be resolved by further agreement by the parties or order of the Court; and it is further

ORDERED, that the Debtor shall have the right to assign to the Purchaser all rights of the Debtor under any real property lease granted by Debtor to third party tenants at the Property, and that such assignments shall state that the leases are in full force and effect and that the security deposits held by Debtor in connection with said leases are transferred to Purchaser in accordance with Section 365 of the Bankruptcy Code; and it is further

ORDERED, that Purchaser is hereby granted "good faith purchaser" status in accordance with Section 363(m) of the Bankruptcy Code and is afforded all of the rights and protections provided by Section 363(m) of the Bankruptcy Code; and it is further

ORDERED, that the Debtor is authorized to satisfy, at the closing of the Sale Agreement, from the proceeds of the sale, (i) the outstanding first mortgage on the Property held by Titan Capital ID, LLC, (ii) any outstanding real estate taxes in respect of the Property, including interest and penalties thereon, accruing either before or after the petition date, (iii) the earned broker's commission to C.J. Pagano & Sons, Inc., and (iv) all title and title related charges at the closing, as provided for in more detail in the Motion; provided, that any amount of the foregoing that is the subject of a good faith dispute shall be held in an attorney's escrow (including an escrow with the Debtor's attorneys, Alter & Brescia, LLP) subject to the parties' agreement or further order of the

4

Court, without any limitation on the parties' ability to close the proposed sale and the Debtor's ability to deliver good title to the Property to the Purchaser or his assignee under the Sale Agreement; and it is further

**ORDERED**, that Purchaser and his agents and the Debtor and its agents are hereby authorized, empowered and directed to execute all documents and instruments and perform such acts as are necessary to effectuate this Order and the closing of the Sale Agreement; and it is further

**ORDERED**, that notwithstanding approval of the Sale Agreement, Debtor has the contractual right to continue to market the Property, and, in the event the Debtor obtains a higher and better offer as determined by this Court prior to the closing under the Sale Agreement, the Purchaser's sole claim in this case shall be for the breakup fee set forth in the Sale Agreement, and it is further

**ORDERED**, that all parties referred to herein have submitted to the jurisdiction of the Bankruptcy Court with respect to all matters relating to or pertaining to this Order and the Sale Agreement; and it is further

**ORDERED**, that the Bankruptcy Court hereby retains jurisdiction to determine any contested matter arising in connection with this Order and the Sale Agreement on an expedited basis; and it is further

**ORDERED**, that the 14-day stay of this Order under Bankruptcy Rule 6004(h) is waived for cause, and this Order is effective immediately upon its entry.

Dated:   White Plains, New York
          March ___, 2017

                              _____
                              HONORABLE ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE